Fox, Appellant, *v.* Industrial Commission of Ohio, Appellee.

(No. 775—Decided December 8, 1953.)

*Mr. Thomas F. Joseph* and *Mr. Harold E. Gottlieb,* for appellant.

*Mr. C. William O'Neill,* attorney general, and *Mr. Chalmers R. Wylie,* for appellee.

Putnam, P. J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Muskingum County directing a verdict for the defendant at the close of plaintiff's evidence.

The assignments of error are:

1. The court erred in the rejection of evidence offered by plaintiff-appellant.

2. The court erred in directing the jury to return its verdict for the defendant.

The plaintiff was a regular employee of The Ohio Power Company in Muskingum County, Ohio, on and prior to November 15, 1943, and on that date sustained an injury in the course of and arising out of his employment, viz., he sprained his ankle by stepping on a stone. Upon application to the defendant, he was awarded compensation for such injury, and later such compensation was made on a permanent partial disability basis. Later, in July 1948, plaintiff made a further claim to the defendant for additional compensation for additional disability, a heart disease, due to such injury. On August 31, 1948, the defendant entered an order admitting that the plaintiff had a heart disease but holding that it was not the result of the injury of November 15, 1943. Application for a rehearing was filed and allowed, and, on February 11, 1952, the claim was again disallowed. Plaintiff then appealed to the Common Pleas Court. A jury was impaneled and sworn, and a verdict was directed at the close of plaintiff's evidence.

As a preliminary to a discussion of the question involved we make the following observation as to the type of testimony necessary to establish the plaintiff's case. In the case of *Stacey* v. *Carnegie-Illinois Steel Corp.*, 156 Ohio St., 205, 101 N. E. (2d), 897, in support of the first paragraph of the syllabus, it is stated, at page 213, as follows:

"There are two types of industrial injury cases, one in which the testimony of lay witnesses does have probative value in establishing the probability of proximate causal relationship between accident and resulting injury, and the other where the testimony of lay witnesses is without probative value to establish a proximate causal relationship between the injury and the result claimed and where medical testimony is absolutely essential to prove such relationship. Each case must be decided upon its own facts in reference to this question."

It is our judgment that the instant case falls within the second category above mentioned. Consequently, any lay testimony in the record must be disregarded and the issue decided upon the medical testimony alone.

In the case of *McNees* v. *Cincinnati Street Ry. Co.*, 152 Ohio

St., 269, 89 N. E. (2d), 138, the sixth paragraph of the syllabus states:

"An injury does not arise out of the employment, within the meaning of the Workmen's Compensation Act, unless there is a proximate causal relationship between the employment and the injury."

At page 274, the following language appears:

"However, the answer to the interrogatory does not establish that there was any *proximate* causal relationship between decedent's employment and either the mental strain and excitement or the coronary thrombosis or his death.

"This raises the question whether an injury must be a proximate result of the employment in order to come within the definition of injury set forth in the last paragraph of Section 1465-68, General Code.

"Although there is no statutory provision requiring a *proximate* causal relationship between a compensable injury and a death for which compensation is sought, this court has frequently held that it is necessary for a death claimant to establish that such an injury was the proximate cause of the death." (Authorities cited.)

And, at page 277, the court stated:

"There is certainly nothing in the language of the General Assembly which would require this court to determine that the General Assembly intended there should be any award of compensation for an injury in an instance where the employment was only a remote cause of the injury. If the language used by the General Assembly is construed, as this court has construed it, so as to require that the consequences of an injury have a proximate causal relationship to the injury, it would not be reasonable to construe the language of the General Assembly so as to require a mere causal relationship between the injury and the employment."

There can be no doubt in our minds, from the holding in that case, that the plaintiff's medical testimony must show a proximate causal relationship between a compensable injury and the condition for which the claim is made. The essential issue is as to how that fact is to be elicited. Bearing in mind that the hearing in the Common Pleas Court is upon only the

record made below and subject to renewed objections to the testimony, it becomes extremely important that the questions be properly asked.

In the instant case the plaintiff called two doctors, Dr. Rusoff and Dr. Minthorne. To each of these doctors only one hypothetical question was propounded. In the trial below the court sustained an objection to those questions. Answers were proffered and, thereafter, the verdict was directed.

In the case of Dr. Rusoff the hypothetical question ended as follows:

"Now, assuming all the information in this hypothetical question to be the facts, also taking into consideration your findings and diagnosis at the time of your examination, do you have an opinion as to whether or not there is a causal relationship between the injury to the ankle and the symptoms which followed as described in this question and the heart involvement which you found at the time of your examination, considering, of course, your findings and diagnosis from your examination as related by you here today?"

To this question counsel for the defendant objected. In sustaining the objection the trial court said:

"Sustained for the reason that the question concludes with an inquiry as to a causal relationship without qualifying it as to being the proximate or direct causal relationship which the *Aiken case*, 143 Ohio St., 113, requires. *McNees case*, 152 Ohio St., requires that any answer to which you might be entitled be predicated upon the proposition of the direct or proximate, and not what otherwise would be a matter of possibility or remote, there is nothing which limits what is inquired of from the doctor of the language of the question to a proximate or direct causal relationship as required by law.

"Counsel for Plaintiff: May we be heard on it in the absence of the jury?

"The Court: You may dictate your—

"Counsel for plaintiff: We especially call the court's attention to the case of *Hallworth* v. *Republic Steel* [153 Ohio St., 349, 91 N. E. (2d), 690] and to the first branch of the syllabus thereof. We further feel that the question of proximate cause is one for the jury to determine from the charge of the court

and from the evidence adduced. There is no indication on the part of the doctor in this case to speculate or to enter into any conjecture whatever but the answer definitely states that there is a causal relationship. We wish to proffer the answer 'Yes, sir.'

"Q. What is your opinion?

"Counsel for defendant: Objection.

"The Court: Sustained.

"Counsel for plaintiff: Proffer the answer. 'I believe there is a causal relationship.'

"Q. Now, if you will, doctor, I wish you would explain to us through what reasoning you arrived at the conclusion that the heart involvement at the time of your examination is causally related to injury to which this man sustained in November, 1943?

"Counsel for defendant: Objection.

"The Court: Sustained.

"Counsel for plaintiff: Proffer the answer. 'Mr. Fox, in November of 1943, sustained a definite injury to his left ankle. This injury to the left ankle has resulted in definite arthritic changes in that left ankle and osteoporosis or decalcification of bone with the symptoms of pain and swelling that have been given me in the hypothetical question, and it appears from the facts given me in the hypothetical question, that Mr. Fox became quite nervous, that he had considerable pain, that he had swelling when he was on his feet without any bandage on the foot, and ankle. Pain, nervousness, difficulty sleeping, all are factors in producing or precipitating heart failure. I do not say the heart failure was caused by the injury but I believe that the factors subsequent to the injury are factors in the precipitation of the heart failure and perhaps hastened it.' "

It is our judgment that neither the hypothetical question and the proffered answer thereto nor the question following it and the proffered answer contained the essential element of proximate causal relationship, as required. Consequently, the court did not err in sustaining the objection thereto or in reconsidering the same after the answers were proffered. With these questions and answers out, the further testimony of Dr.

Rusoff in the record falls far short of the probative testimony necessary to take the case to the jury.

In sustaining such holding of the trial court, we do not mean to hold that, in all cases where medical testimony is based upon hypothetical questions, the original question must include all the elements of a probable proximate causal relationship to a reasonable medical certainty. There are and may be cases where certain preliminary questions may be asked as to a causal relationship, followed by other questions which include the proximate causal connection. However, in a case such as this which is heard on the record, made on rehearing, where only the one question is asked and that question falls short of the requirements and cannot thereafter be supplemented, the defect is fatal.

We now come to the testimony of Dr. Minthorne. The hypothetical question propounded to him was sustained for a different reason. It did not contain the defect which was in the question propounded to Dr. Rusoff, in that Dr. Minthorne was asked whether there was any direct causal relationship; nor did the proffered answer have the defect contained in the answer of Dr. Rusoff. Dr. Minthorne's proffered answer contained the positive statement that there was a direct causal relationship, as did his explanation as to the reasons for such statement. The defect in that hypothetical question was that it contained assumptions which the doctor was required to make which were directly contrary to the findings he had made upon his examination. It contains also statements which were contradictory to the statement made by the claimant in his examination. It is our judgment, as it was the trial court's, that such discrepancies vitiated the question. In another type of case, had such a question been sustained in the first instance, a new one might have been propounded eliminating the objectionable features; in a case such as the instant one that cannot be done.

It has been argued to this court in this case that the requirement of incorporating in a question the probable proximate cause to a reasonable medical certainty is not proper because it usurps the ultimate question and issue which the jury has to answer. This is true in other cases, but where such

questions depend only upon expert medical testimony the only ultimate question for a jury is to choose between the credibility of the various medical witnesses for plaintiff and defendant.

The judgment is affirmed.

*Judgment affirmed.*

MONTGOMERY and McCLINTOCK, JJ., concur.